Case number 22-8521, Dean Ray Larry Klayman. Mr. Klayman for the respondents. Mr. Klayman, good morning. Morning. May it please the court, Judge Henderson, Judge Wilkins, and Judge Walker. This is a very important case. It involves me, but it really involves everyone. It involves issues of whether or not an individual can get a fair hearing. This case is 13 years old. It began in 2010. Florida, Pennsylvania dismissed identical complaints filed by Ms. Elham Sataki 13 years ago. The case sat at the D.C. Bar Disciplinary Council for seven years. Ms. Sataki, under the policies of the Office of the Disciplinary Council, abandoned the complaint. That's in her brief. Seven years later, it was resurrected when there was a new disciplinary council by the name of Hamilton Fox. The previous disciplinary council, Dean Schiff, was a very fair and honest man. During the reign of Mr. Fox, various conservatives and Republican lawyers have been subject to bar complaints. It's become kind of a jihad in a way. Kellyanne Conway, former Attorney General Bill Barr, all four presidents of the D.C. Bar brought a complaint against him because he simply dismissed the indictment of Michael Flynn. Rudy Giuliani, John Eastman, Senator Ted Cruz, Josh Foley. Yet on the other hand, Kevin Kleinsmith, who got wrapped up in the Russian collusion investigation, who was convicted of perjury, had a slap on the wrist. There's something wrong there. There's something not right. At the hearing committee, they were a very partisan committee. An individual by the name of Michael Tiger, who had been fired by Justice Brennan for his ties to Fidel Castro, sat on that committee. He recently wrote a book, Mythologies of What's Wrong with Capitalist Law, just paraphrasing, endorsed by Angela Davis for the dean, Dorn. And Anthony Fitch, the hearing chair, was very deferential to him, very much of the same political persuasion. Importantly, there is no clear and convincing evidence that I committed any ethics violations. I submitted seven material witnesses, including the union president, Tim Shamble, who worked with me every step of the way to try to help Ms. Sataki. She had claimed sexual harassment and workplace retaliation at the Voice of America. I had Gloria Allred, who happens to be a friend of mine, but also I took Ms. Sataki to her when it was determined that she should get other counsel. She didn't want Ms. Allred. I took her to another one, who didn't want that lawyer either. Former Judge Stanley Sporkin, who you remember, testified on my behalf. He said that my case strategy was sound. He attested to my character. I've been in front of him for many, many years. May his soul rest in peace. He showed up at the hearing in a wheelchair with his family. That's how much he felt about coming to testify on my behalf. Ms. Sataki was coached. She was told to say that I never got authorization to publicize her case. Mr. Shamble testified that that's the way you can try to coax a settlement with Voice of America, which has a reputation of being the worst agency in government in terms of employee relations. But importantly, after the hearing committee and during the briefing process before the board, and I might add the board was chaired by Matt Kaiser. Matt Kaiser, who's now filed cases against Donald Trump and who wrote for Above the Law, extolling the virtues of Hillary Clinton and disparaging Trump, is a partisan as well. He was the board chairman. I asked to open the record to look at that document because Ms. Sataki had given a video interview on Persian TV in Los Angeles, revealing all of the information she claims that I should not have revealed to try to coax the settlement. And in fact, she went up to Capitol Hill with Tim Shamble. Your Honor, we were forced to file a Rule 60 complaint in the Superior Court. That complaint is going through its process now. Help me understand. The rules of civil procedure in Superior Court are pretty much identical to the federal rules of civil procedure. Correct. So could, if you were, if your Supreme Court bar, you believe you could file an action under Rule 60 in the U.S. District Court to have the District Court judge set aside the order of the Supreme Court denying you admission to the Supreme Court bar? That is not the issue here. I'm asking you a question. Would that be a plausible lawsuit? Yes, it would be. Do you think Rule 60 would give a U.S. District Judge the authority to set aside an order of the U.S. Supreme Court? If that order was based on fraud, yes. And we're saying there was fraud here. Fraud in prosecutorial time. That's the theory of your Superior Court lawsuit under Rule 60, right? Your Honor, the reason your question, in all due respect, is out of context is because the judgment here was of the Court of Appeals for the District of Columbia. Consequently, that judgment can be set aside by the Superior Court of the District of Columbia, which is inferior to the D.C. Court of Appeals, right? Yes, it can be appealed back. But that's not the point. An inferior court can set aside a judgment of the Superior Court? If it's an instance in the history of litigation where that's ever happened? Your Honor, I'm glad you're asking these questions. I will file a supplemental brief. I've been asking for the Court of Appeals. No, I'm not asking for a supplemental brief. You haven't been given leave to do that. You have your opportunity now. I haven't been given leave for anything. I agree. I haven't. And, you know, please. You've got your time right now. Tell me when that's happened. I've only got 10 minutes because I asked for 20 minutes. But let me get to the point here, Your Honor, if I may. Regardless of that, regardless of that, these documents were not considered. I was denied due process. That video was not considered. People died in the intervening 13 years. Rotunda, Professor Rotunda, who was going to testify on my behalf, an expert. Arlene Naviera, the psychologist who treated Ms. Sataki, who I asked. Florida and Pennsylvania dismissed the case. You can sit there and be upset at me, but I'm entitled to defend myself. And I've asked repeatedly. I asked you to review the record. That's something that you can do. You said you wouldn't even do that. I wanted to give you a flash drive. Then I gave you a hard copy. Oh, we don't want to look at that. I asked for a stay, a simple stay, so we can sort through these issues. No, that was refused as well. I asked for more than 10 minutes because there's nobody on the other side. I couldn't even get more than 10 minutes. Then I was forced to file a complaint in the Superior Court just to try to get you to look at the record, get you to look at the record. Your defense in this case, you can't sit on this case against me. I didn't file that for the purpose of trying to disqualify you. I filed it for the purpose to get you to look at the record, and you wouldn't do that. And now you're sitting here on this court, and you have a conflict of interest. Mr. Klayman, we look at whatever you file. You are subject to the rules just like everybody else. If you want to file an appendix, take the appropriate parts of the record and put it in an appendix, and we'll review it. Why should you be above the rules? I'm not, and that's exactly what we did. The clerk told me to move to leave to put the testimony in the record. You had an opportunity to file an appendix, and you did. Then you wanted to supplement the appendix, and we didn't grant you leave. There's no harm in that. Just like we don't grant lots of people leave to file everything they want. You know, I would expect, Your Honor, because you represent not just me, but the American people. You take an oath of office that you're not to rule based on personality or persons on the basis of the facts and the law. There was no prejudice to grant that, and not to grant that. And in all of these orders that you've issued, there's no explanation. There's no reasoning. It's just banned. And I suggest that a lot of this has to do with the fact that I've been critical of certain members of this court, and I have written a book. In fact, I'd like to leave you a copy. I hope you read it, and I hope you take it to heart. It takes a can of revolution to back up America. When I talk about some of the members of this court who have not lived to the judicial code of conduct, which is in great debate today, I might add, this, Your Honor, is a situation which many people have described. I supported Donald Trump. I don't like what's going on with the January 6th defendants here, the peaceful ones, some of whom I represent in class actions. I've been critical, and I believe that a lot of what's been going on here with the three of you, in all due respect, is retaliation. I can't even get a fair hearing from you. I've been a member of this bar for many, many years, since 1980. And this is a situation today which has even been described by Alan Dershowitz as McCarthyism with regard to people that supported Donald Trump. Let's take the law license away. Let's not let them practice law. Let's remove them. Well, I'm standing up here as a matter of principle. Frankly, you know, to file cases in this court anymore, I would try to find another court where I had jurisdiction and stand. But I'm here as a matter of principle, because today it's Larry Klain, tomorrow it's somebody else. And you've got a situation here with even the former Attorney General, Bill Barr, all four presidents of the D.C. Bar and an assistant bar counsel filed a complaint against him simply because he decided to dismiss a complaint against a criminal indictment against Michael Flynn. This city has become toxic. The city has become, in fact, weaponized, particularly against conservative and Republican lawyers. And all I'm asking for you to do is to read the record, read the testimony of Tim Shamble, read the seven witnesses. Ms. Sataki was impeached on a number of occasions. The Office of Civil Rights, where I filed a claim for her, said that she had not told the truth about the sexual harassment and about the workplace retaliation. She testified in front of this court that she wanted to go to Los Angeles because she was going to commit suicide, and she didn't because of what happened. Your time is up, Mr. Klain. Okay. Wrap up. Thanks. Well, Your Honor, I just asked you to read the record, that's all, please. And I'm asking you not just for me, but for what this court stands for, integrity, not retaliation. And here's my book, and I'd like you to give me a copy when I approach the bench. No, you may not. Okay. I'm going to make it online. Thank you.
judges: Henderson, Wilkins, Walker